UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

**KATI HOEKSTRA,**

      Plaintiff,

v.                                                    Case No.
                                                        Hon.

**VAN BUREN COUNTY,**

      Defendant.
_____/

SOMMERS SCHWARTZ, P.C.
Jenna H. Sheena (P84645)
Tad T. Roumayah (P74081)
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300
jsheena@sommerspc.com
troumayah@sommerspc.com
_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

      NOW COMES Plaintiff, KATI HOEKSTRA, by and through her attorneys, SOMMERS SCHWARTZ, P.C., and for her Complaint against Defendant, VAN BUREN COUNTY, states as follows:

1

## PARTIES

1. Plaintiff, Kati Hoekstra ("HOEKSTRA"), is an individual currently residing in the City of Allendale, Ottawa County, State of Michigan. At all times relevant to this Complaint, Plaintiff resided in the Western District of Michigan.

2. Defendant, Van Buren County ("VBC"), is a Michigan municipal corporation doing business in the City of Paw Paw, Van Buren County, State of Michigan. At all relevant times to this Complaint, Defendant conducted business in the Western District of Michigan.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

4. The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they originate from the same facts that form the basis of her federal claims.

5. The Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Michigan and employed Plaintiff and other individuals within the state of Michigan.

6. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Defendant employed Plaintiff in this District, conducts business in this

District, and the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## GENERAL ALLEGATIONS

7. HOEKSTRA is a thirty-eight-year-old unmarried woman who began her employment with VBC in June 2018 as its Assistant Prosecuting Attorney.

8. HOEKSTRA holds a juris doctor degree and attended law school at Western Michigan University - Cooley Law School.

9. HOEKSTRA has held a license to practice law in Michigan since 2015.

10. While at VBC, HOEKSTRA earned $38.61 per hour and reported to Susan Zuiderveen (Prosecuting Attorney).

11. As of January 2021, HOEKSTRA worked in the South Haven District Court and was assigned to the sobriety court team.

12. In addition to Ms. Zuiderveen, HOEKSTRA worked closely with Chief Assistant Prosecuting Attorney Keith Robinson.

13. Throughout her employment, Mr. Robinson subjected HOEKSTRA to numerous conversations about his Christian religion, how the "impact of God" changed his life, and how, according to Mr. Robinson, this same belief could "change [HOEKSTRA's] life."

3

14. These conversations made HOEKSTRA uncomfortable as she identifies as Agnostic and has a negative personal history with the Christian church and religion.

15. At all times, VBC, including Mr. Robinson, were aware that HOEKSTRA was not part of the Christian religion.

16. From January 10 through January 21, 2022, HOEKSTRA attended a training in Auburn Hills, Michigan.

17. While staying in Auburn Hills for the training, HOEKSTRA was sexually assaulted by a Michigan State Trooper.

18. On January 26, 2022, Maggie Hosteler (Victims Right Coordinator) called HOEKSTRA to advise that she overheard Ashley James (Legal Secretary) talking about HOEKSTRA to other co-workers.

19. Specifically, Ms. Hosteler overheard Ms. James state that in her opinion she "did not know why [HOEKSTRA] was at the County's holiday party," that HOEKSTRA is a "bitch," and "no one in the office likes [HOEKSTRA]."

20. That same day, HOEKSTRA called Ms. Zuiderveen to advise that she was aware of negative comments being made in the office about HOEKSTRA and explained that while she did not want Ms. James to get into trouble, HOEKSTRA believed that Ms. Zuiderveen did not want her staff to conduct themselves in such a manner and that she (HOEKSTRA) wanted the negative comments to cease.

21. Ms. Zuiderveen advised that she would confront Ms. James regarding her behavior.

22. Moreover, during this phone call, Ms. Zuiderveen complimented HOEKSTRA's work performance, reputation within the county, and how well HOEKSTRA was managing the district county work.

23. Shortly thereafter, Ms. Zuiderveen met with Ms. James, who reportedly became very emotional and denied making negative comments about HOEKSTRA.

24. Instead, Ms. James explained to Ms. Zuiderveen that she was talking about HOEKSTRA because HOEKSTRA made staff feel "uncomfortable" when she would allegedly "brag" about her sexual encounters.

25. On February 3, 2022, Ms. Zuiderveen and Mr. Robinson met with HOEKSTRA at the South Haven District Court to discuss the information they received from Ms. James.

26. During this meeting, Ms. Zuiderveen and Mr. Robinson asked HOEKSTRA if she was "bragging" about sexual encounters.

27. HOEKSTRA denied "bragging" about her sexual encounters, but recently told Ms. Hosteler and Lisa Oliver (Secretary) that she entered into a romantic relationship with an individual she met at the January 2022 training. HOEKSTRA met this individual prior to being sexually assaulted by the Michigan State Trooper.

28. Ms. Zuiderveen and Mr. Robinson then began asking HOEKSTRA deeply personal questions about her personal sex life.

29. At this meeting, Ms. Zuiderveen asked HOEKSTRA if she had sexual contact with a criminal defense attorney who maintains a private law firm within the county.

30. HOEKSTRA responded that she was visiting a local bar with friends and ran into this defense attorney. This attorney was heavily intoxicated and kissed HOEKSTRA without her consent. HOEKSTRA further advised that she did not encourage or elicit this behavior from the defense attorney.

31. HOEKSTRA stated that she should not be disciplined for a non-consensual encounter. Nevertheless, Ms. Zuiderveen stated that because of HOEKSTRA's "poor judgment," she would include this information in the "investigation."

32. Ms. Zuiderveen continued to probe into HOEKSTRA's private life. She asked HOEKSTRA if she engaged in a sexual relationship with the brother of a different defense attorney who maintains a private law firm within the county.

33. HOEKSTRA admitted that she had a single consensual sexual encounter with the brother. However, the brother is not an attorney and has no employment relationship with VBC.

34. Ms. Zuiderveen asked HOEKSTRA if she had "sexual contact with a married deputy."

35. HOEKSTRA responded that she shared a consensual kiss with the deputy on two occasions.

36. Ms. Zuiderveen asked HOEKSTRA if she had "sexual contact" with anyone at the January 2022 training.

37. HOEKSTRA responded that she did have a consensual sexual encounter with a prosecutor from Livingston County outside of work hours. HOEKSTRA further advised that she had since entered into a romantic relationship with the prosecutor.

38. Ms. Zuiderveen continued to interrogate HOEKSTRA and asked if HOEKSTRA had other sexual contact with anyone else at the January 2022 training. HOEKSTRA advised that she was sexually assaulted by a Michigan State Trooper while in Auburn Hills for the training. This sexual assault occurred subsequent to the consensual encounter with the prosecutor.

39. Ms. Zuiderveen and Mr. Robinson later asked if HOEKSTRA had ever attended counseling.

40. HOEKSTRA advised that she participated in some counseling while she attended her undergraduate studies but stated she did not find it helpful.

41. In response, Mr. Robinson stated, "Well, it comes as no surprise to me that the counseling you attempted was unsuccessful. **I encourage you to seek out a faith-based counselor who will help you to the Lord as this is the only way you can be healed and forgiven.**"

42. Mr. Robinson went on to quote Bible verses to HOEKSTRA that indicated a person **"cannot heal from emotional trauma without God's influence."**

43. Mr. Robinson then told HOEKSTRA that she probably feels like she is at a "low" or even "rock bottom" and that things would "get better for [her] **but only through a relationship with God.**"

44. Ms. Zuiderveen ended the meeting by placing HOEKSTRA on paid administrative leave and informed HOEKSTRA that she would need to meet with human resources and the county's attorney to determine "next steps" regarding her employment.

45. On February 8, 2022, HOEKSTRA met with Ms. Zuiderveen and Mr. Robinson, at which time they terminated her employment.

46. Ms. Zuiderveen provided HOEKSTRA with a termination letter that listed several of HOEKSTRA's private romantic encounters, including inexplicably the non-consensual sexual assault by the Michigan state trooper at the January 2022 training, as reasons for her termination.

47. Among other things, HOEKSTRA's termination letter states:

   a) "I became aware that Ms. Hoekstra was talking to others in the prosecutor's office about sexual encounters with a defense attorney in South Haven and a defense attorney's brother."

   b) "Ms. Hoekstra then attended DRE training in Auburn Hills from January 10 through January 21."

   c) "Upon her return, Ms. Hoekstra told others she had sexual encounters with 2 people that attended training with her."

   d) "She stated she had 'been with' a married detective at the Van Buren County Sheriff's Office Department."

   e) "When told that the deputy was married, Ms. Hoekstra responded, 'Well, I'm not.'"

   f) "The Prosecuting Attorney Association confirmed they were also made aware that Ms. Hoekstra had 2 sexual encounters with attendees at training."

48. After reading the termination letter, HOEKSTRA began crying and stated that her termination letter is going to "ruin her reputation" and she will "never be able to get a job as a prosecutor again."

49. Mr. Robinson responded to this statement by stating that HOEKSTRA had a "difficult journey ahead of [her]," but that she could be "**healed through God's influence**," and only then would her "character be restored" so that she can be "worthy of working as a prosecutor again."

50. At all times during the February 3 and February 8 meetings, Ms. Zuiderveen witnessed Mr. Robinson making many of these overtly religious

9

statements towards HOEKSTRA and she (Zuiderveen) nodded her head in approval and agreement with Mr. Robinson's religious comments.

51. On February 11, 2022, HOEKSTRA submitted a written statement to VBC responding to the allegations made about her private life as outlined in her termination letter.

52. Upon information and belief, VBC later replaced HOEKSTRA with a married woman who identifies as Christian.

53. On November 16, 2022, HOEKSTRA filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for sex discrimination, religious discrimination, and retaliation.

54. On September 29, 2023, the EEOC issued HOEKSTRA a Notice of Right to Sue letter.

**COUNT I: SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

**AND**

**COUNT II: SEX DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT**

55. HOEKSTRA incorporates Paragraphs 1 through 54.

56. Title VII prohibits employers from discriminating against any individual regarding the compensation, terms, conditions, or privileges of employment because of the employee's sex. 42 U.S.C. 2000e-2(a)(1).

57. The ELCRA prohibits employers from discriminating against any individual regarding the compensation, terms, conditions, or privileges of employment, because of the employee's sex. MCL § 37.2202(1)(a).

58. VBC is an employer within the meaning of Title VII and the ELCRA. See 42 U.S.C. § 2000e *et seq.* and MCL § 37.2101 *et seq.*

59. At all relevant times, VBC had a duty under Title VII and the ELCRA not to discharge or otherwise discriminate against HOEKSTRA because of her sex.

60. VBC violated HOEKSTRA's civil rights by discriminating against HOEKSTRA because of her sex, which included but was not limited to:

   a) Inquiring about HOEKSTRA's private sexual relationships.

   b) Inquiring about HOEKSTRA's private sexual encounters.

   c) Engaging in rumors regarding Hoekstra's alleged sexual promiscuity.

   d) Placing HOEKSTRA on administrative leave because of her sex.

   e) Terminating HOEKSTRA's employment because of her sex.

   f) Treating HOEKSTRA differently than similarly situated male employees within VBC, who were not subjected to the same negative treatment.

61. If HOEKSTRA had been a male, she would not have been treated in the same manner.

62. As a direct and proximate result of Defendant's violations of Plaintiff's civil rights, HOEKSTRA has suffered damages, including but not limited to, loss of

11

past and future income and employee benefits, mental anguish and emotional distress, and loss of professional reputation, attorney fees, costs, and interest.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment against Defendant, in whatever amount is shown to be established by the proofs in this cause, including lost past and future wages, lost benefits, mental and emotional distress damages, loss of professional reputation, together with interest, costs, and reasonable attorneys' fees.

## COUNT III: RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII OF HE CIVIL RIGHTS ACT OF 1964

## AND

## COUNT IV: RELIGIOUS DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT

63. HOEKSTRA incorporates Paragraphs 1 through 54.

64. Title VII and the ELCRA prohibit religious discrimination in employment decisions or conditions. *See* 42 U.S.C. § 2000e-2 and MCL § 37.2202.

65. At all relevant times, HOEKSTRA was an employee and VBC was her employer for purposes of 42 U.S.C. § 2000e *et seq* and MCL § 37.2201 *et seq*.

66. EEOC Guidance states that "these protections apply whether the religious beliefs or practices in question are common or non-traditional, and regardless of whether they are recognized by any organized religion…" https://www.eeoc.gov/laws/guidance/section-12-religious

discrimination#:~:text=Overview%3A%20Religion%20is%20very%20broadly,preferences%20are%20not%20religious%20beliefs

67. As outlined above, HOEKSTRA identifies as Agnostic while Ms. Zuiderveen and Mr. Robinson identify as Christian.

68. VBC discriminated against HOEKSTRA because HOEKSTRA espoused a different sincerely held religious belief that conflicted with Ms. Zuiderveen's and Mr. Robinson's self-identified Christian religion.

69. VBC violated HOEKSTRA's civil rights by discriminating against HOEKSTRA because of her religion, which included but was not limited to:

  a) Mr. Robinson advising HOEKSTRA that her past attempts at counseling were unsuccessful because she did not treat with a "faith-based counselor."

  b) Mr. Robinson advising HOEKSTRA that finding "the Lord is the only way [she] can be healed and forgiven."

  c) Mr. Robinson quoting bible verses to HOEKSTRA that indicated a person cannot heal from "emotional trauma without God's influence."

  d) Mr. Robinson advising HOEKSTRA that she feels like she is at a "low" or "rock bottom" because she does not have God in her life.

  e) Mr. Robinson advising HOEKSTRA that the only way she can be "worthy of working as a Prosecutor" in the future is if she is "healed through God's influence."

  f) Placing HOEKSTRA on administrative leave.

  g) Terminating HOEKSTRA.

    h) Treating HOEKSTRA differently than similarly situated employees with different religious beliefs who were not terminated.

    i) Replacing HOEKSTRA with a person of different religious beliefs and of the same religious beliefs as Ms. Zuiderveen and Mr. Robinson.

70. During the above instances where Mr. Robinson directed religious comments towards HOEKSTRA, Ms. Zuiderveen nodded her approval and agreed with Mr. Robinson's comments.

71. As a direct and proximate result of Defendant's violations of Plaintiff's civil rights, HOEKSTRA has suffered damages including, but not limited to, loss of past and future income and employee benefits, mental anguish and emotional distress, loss of professional reputation, attorney fees, costs, and interest.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment against Defendant, in whatever amount is shown to be established by the proofs in this cause, including lost past and future wages, lost benefits, mental and emotional distress damages, loss of professional reputation, together with interest, costs, and reasonable attorneys' fees.

### COUNT V:  MARTIAL STATUS DISCRIMINATION IN VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT

72. Plaintiff incorporates Paragraphs 1 through 54.

73. Employees have a right to be free from discrimination on the basis of marital status. MCL § 37.2102 *et seq*.

74. At all relevant times, HOEKSTRA was an employee and VBC was her employer for purposes of MCL § 37.2201.

75. At all times, HOEKSTRA was the only unmarried Prosecutor within VBC's Prosecutor's Office.

76. VBC violated HOEKSTRA's civil rights by discriminating against HOEKSTRA because of her marital status, which included but was not limited to:

   a) Questioning if HOEKSTRA had "sexual contact with a married deputy."

   b) Placing HOEKSTRA on administrative leave.

   c) Terminating HOEKSTRA.

   d) Using HOEKSTRA's status as an unmarried woman as a reason for her termination.

   e) Treating HOEKSTRA differently than similarly situated employees who were married.

   f) Replacing HOEKSTRA with a married woman.

77. As a direct and proximate result of Defendant's violations of Plaintiff's civil rights, HOEKSTRA has suffered damages, including but not limited to, loss of past and future income and employee benefits, mental anguish and emotional distress, loss of professional reputation, attorney fees, costs, and interest.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment against Defendant, in whatever amount is shown to be established by the proofs in

this cause, including lost past and future wages, lost benefits, mental and emotional distress damages, loss of professional reputation, together with interest, costs, and reasonable attorneys' fees.

SOMMERS SCHWARTZ, P.C.

*/s/ Jenna H. Sheena*
Jenna H. Sheena (P84645)
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300

Dated:     December 28, 2023

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

**KATI HOEKSTRA,**

    Plaintiff,

v.                                                                             Case No.
                                                                               Hon.

**VAN BUREN COUNTY,**

    Defendant.
_____/
SOMMERS SCHWARTZ, P.C.
Jenna H. Sheena (P84645)
Tad T. Roumayah (P74081)
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
jsheena@sommerspc.com
troumayah@sommerspc.com
_____/

**DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, Kati Hoekstra, by and through her attorneys, Sommers Schwartz, P.C., and hereby demand a trial by jury relative to the above matter.

SOMMERS SCHWARTZ, P.C.

*/s/ Jenna H. Sheena*
Jenna H. Sheena (P84645)
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300

Dated:  December 28, 2023